UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-20372-CIV-GOLD/McALILEY

NATIONWIDE ADVANTAGE
MORTGAGE COMPANY,

    Plaintiff,
vs.

FEDERAL GUARANTY
MORTGAGE COMPANY, *et al*.

    Defendants.
_____/

**ORDER GRANTING MOTIONS TO DISMISS [DE 30]; [DE 32]
IN PART; DISMISSING CERTAIN CLAIMS WITH PREJUDICE;
REQUIRING DEFENDANTS TO ANSWER AMENDED COMPLAINT [DE 29]**

**I.**    **Introduction**

THIS CAUSE is before the Court upon two Motions to Dismiss Plaintiff's Amended Complaint filed by the Defendants in the above-styled action. **[DE 30]**; **[DE 32]**. The first motion was filed by Defendant Frank Garcia on November 3, 2009 and argues that: (1) Plaintiff's fraudulent inducement and civil conspiracy claims – i.e., counts one and three – are inadequately pled and are barred by the economic loss rule; and (2) Plaintiff's breach of contract claims against Mr. Garcia – i.e., counts five, six, and seven – fail because Plaintiff's allegations are insufficient to pierce Defendant Nationwide Guaranty Mortgage Company's ("Nationwide" or "Plaintiff") corporate veil. *See* **[DE 30]**. Then, on November 13, 2009, Defendants Federal Guaranty Mortgage Company ("FGMC") and Liza Garcia filed a two-page motion to dismiss that simply "adopt[ed] and incorporate[d] by reference the arguments" made in Frank Garcia's motion to dismiss "as those arguments and issues relate to Liza Garcia and FGMC." *See* **[DE 32]**. Plaintiff filed responses in opposition to

the three motions, *see* **[DE 33]**; **[DE 36]**; **[DE 37]**, and on December 21, 2009, Defendant Frank Garcia filed the only reply.  See **[DE 38]**.  I have jurisdiction pursuant to 28 U.S.C. § 1332(a).[1]  Having carefully considered the relevant submissions, the record, the applicable case law, and being otherwise duly advised, I grant the motions in part and dismiss counts one, two, and three of Plaintiff's Amended Complaint with prejudice; however, I decline to dismiss counts five, six, and seven.

## II.     Factual Background[2]

This case arises out of various transactions entered into between Plaintiff Nationwide and defendant FGMC for the purchase and sale of residential mortgage loans ("the Mortgage Loans").  (Am. Compl. at ¶ ¶ 7, 15, 16, 24, 87).  In anticipation of the purchase and sale transactions, Plaintiff and FGMC entered into a Correspondent Lender

---

[1] Although the parties have not briefed issues pertaining to choice of law, I "assume that Florida law is the applicable substantive law" for the purposes of deciding the issues raised by the motions "since both parties have briefed . . . Florida authority." *Manhattan Bank v. Rood*, 698 F.2d 435, 436 n.1 (11th Cir. 1983).  "[B]ecause the parties rely upon Florida law, [I] presume its applicability" to the issues addressed herein *Id.*  Additionally, having independently reviewed the pertinent submissions, it appears that Florida law does indeed apply to the issues addressed herein.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941) (concluding that a federal court sitting in diversity must apply the choice-of-law rules of the state it which it sits); *International Insurance Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989) (stating that, under Florida's choice-of-law principles, the law of the state of incorporation governs the liabilities of the officers or directors under Florida's choice-of-law principles); *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980) (noting that Florida applies tort law of the state that has the most significant relationships to the tort claim); **[DE 29]**; **[DE 29-1]** (indicating that FGMC is a Florida corporation and that Florida has most significant relationship to Plaintiff's tort claims).

[2] For purposes of a motion to dismiss, I take as true all factual allegations in the Amended Complaint and the pertinent counterclaims, and the exhibits attached thereto. *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  To the extent there is a conflict between the allegations in the Amended Complaint and the exhibits, the exhibits control.  *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quotations omitted).

Purchase Agreement ("CLPA") on July 24, 2006.  (*Id.* at ¶ 65, Ex. A).  The CLPA – which was signed by Defendant Frank Garcia as President of Defendant FGMC – included, *inter alia*, various representations by FGMC that it was the "sole legal, beneficial, and equitable owner [and] . . .  has good and marketable title" to each Mortgage Loan and the "full right to transfer and sell [each] Mortgage Loan to NAMC free and clear of any encumbrance . . . ." (*Id.* at Ex. A, ¶ 11).  Plaintiff further alleges that similar representations were made by Defendants Frank and Liza Garcia[3] prior to the execution of the CLPA with regard to particular Mortgage Loans, and that said representations were falsely made as part of an agreement entered into by Defendants Frank and Liza Garcia to induce Nationwide to purchase encumbered or otherwise defective Mortgage Loans.  (*Id.* at ¶ ¶ 8, 17, 25, 52).

Following the execution of the CLPA, Defendant FGMC sold various Mortgage Loans to Plaintiff.  (*Id.* at ¶ ¶ 7, 15, 24, 52, 73).  Despite the representations set forth in the CPLA and those made by the Garcia Defendants prior to the execution of the CPLA, Plaintiff contends that many of the Mortgage Loans were "defective" and had been previously conveyed or pledged to third parties, and that as a result, Plaintiff suffered damages.  (*Id*. at ¶ ¶ 9, 14, 18, 23, 26, 34 and 42).

On April 30, 2008, Plaintiff and Defendant FGMC executed a Settlement Agreement regarding the Mortgage Loan transactions.[4]  (*Id.* at ¶ 89).  The Settlement Agreement, as amended, required FGMC to make certain payments in exchange for a release of Plaintiff's claims against FGMC regarding the Mortgage Loans.  (*Id.*, Ex. B, ¶ ¶ 1-3).  The Settlement

---

[3] Liza Garcia is an officer and director of Defendant FGMC.  (*Id.* at ¶ 38).

[4] The Settlement Agreement was subsequently amended on three separate occasions. (Am. Compl. at ¶ 89).

Agreement further provided that upon FGMC's failure to timely make the required payments, Plaintiff would have the right to exercise all of its rights and remedies pursuant to the CPLA, including, for example, the provisions of the CPLA requiring FGMC to repurchase the Mortgage Loans in certain situations. (*Id.*). According to Plaintiff, Defendant FGMC breached the Settlement Agreement by failing to tender the required payments and, as a result, incurred significant monetary damages. (*Id.*, ¶ ¶ 90, 94). Following this breach, FGMC filed a Complaint **[DE 1]** – which was subsequently amended **[DE 29]** – and asserted claims for fraudulent inducement, civil conspiracy, and breach of contract against the Defendants.

### III. Standard of Review

For the purposes of a motion to dismiss, my review is "limited to the four corners of the complaint" and any documents referred to in the complaint which are central to the claim. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Thus, for the purposes of deciding Defendants' motions, only the contents of Plaintiff's Amended Complaint and the central exhibits will be considered. *See Brooks v. Blue Cross & Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997).

In determining whether to grant a motion to dismiss, I must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the Plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

1959, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'" *Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir. 2007) *(*quoting *Twombly*, 127 S.Ct. at 1965). "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." *Watts*, 495 F.3d at 1295 (citing *Twombly*, 127 S. Ct. at 1965) (internal quotations omitted)). In order to survive a motion to dismiss, the Plaintiff must have "nudged [its] claims across the line from conceivable to plausible." *Bell Atl.*, 127 S. Ct. at 1974. The rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *Id.* It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible." *Id.*

The pleading requirements are different for certain matters, including claims founded upon conspiracy and fraud. With regard to fraud, Federal Rule of Civil Procedure 9(b) provides that in "alleging fraud . . . a party must state with particularity the circumstances constituting fraud." The Eleventh Circuit has held that in order to comply with the mandate of Rule 9(b), a Plaintiff must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross*

5

*& Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Simply put, Plaintiffs alleging fraud must plead "the who, what, when, and where [of the fraud] *before* access to the discovery process is granted." *Infante v. Bank of America Corp.,* -- F. Supp. 2d. --, 2009 WL 5554641, *2 (S.D. Fla. Dec. 18, 2009) (citation omitted) (emphasis in original). This rule requiring particularity serves an important purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (quoting *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir.1988)) (internal quotes omitted).

With regard to claims founded upon the existence of a conspiracy, "the Eleventh Circuit requires a heightened pleading standard . . . because a defendant must be informed of the nature of the conspiracy alleged," *Griswold v. Alabama Dep't. of Indus. Relations*, 903 F.Supp. 1492, 1500-1501 (M.D. Ala.1995) (citations omitted), and "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint" dependant upon the existence of a conspiracy. *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985). To satisfy the heightened pleading standard for conspiracy claims, " '[t]he plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some evidence of agreement between the defendants.' " *Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 890-91 (11th Cir. 2007) (quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002)); *see also Twombly*, 550 U.S. at 564 n. 10 (noting that a defendant seeking to respond to such conclusory allegations of a conspiracy "would have little idea where to begin" because the pleadings "mentioned no specific time, place, or

person involved in the alleged conspiracies."). The remedy for a failure to plead with sufficient particularity is dismissal with or without prejudice, depending on the circumstances. *McInteer*, 470 F.3d at 1362 (affirming district court's dismissal of claim with prejudice for failing to plead fraud with sufficient particularity).

**IV. Analysis**

A. *Although the Economic Loss Rule Does Not Bar Plaintiff's Fraudulent Inducement Claims, Plaintiff has Failed to Plead its Fraudulent Inducement Claims with Sufficient Particularity to Survive Dismissal*

In their Motions to Dismiss, Defendants argue that Plaintiff's fraudulent inducement claims (i.e., counts one and two) fail because: (1) they are barred by Florida's contractual privity economic loss rule and, (2) they are inadequately pled.[5] In response, Plaintiff asserts that its fraudulent inducement claims fall within the independent tort exception to the economic loss rule and are therefore not barred.

The contractual privity economic loss rule[6] bars parties in contractual privity from bringing tort actions to recover solely economic damages where the tortfeasor has not committed a breach of duty separate and apart from a breach of contract. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The purpose of this "prohibition against tort actions to recover solely economic damages for

---

[5] Defendants further assert that because the fraudulent inducement claims fail, the civil conspiracy claim, which is predicated upon the fraudulent inducement claim, fails as well. **[DE 30, p. 8]**; *Wright v. Yurko*, 446 So. 2d 1162, 1164-65 (Fla 5th DCA 1984) (noting that "[a]n act which does not constitute a basis for a cause of action against one person cannot be made the basis for a civil action for conspiracy.").

[6] There is also a products liability economic loss rule that is inapplicable here. *See Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 537-38 (Fla. 2004).

7

those in contractual privity is [] to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* (citation omitted). Thus, "where a defendant has not committed a breach of duty apart from a breach of contract," the tort action is typically barred. *Id.* However, if the alleged tort specifically involves acts that are "independent of any contractual breach" – known as an "independent tort" – the tort claim will not be barred. *Am. Express Travel Related Servs. Co., Inc. v. Symbiont Software Group, Inc.,* 837 So. 2d 434, 435 (Fla. 3d DCA 2002), *review denied,* 851 So. 2d 729 (Fla. 2003)*; HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996).

According to the Florida Supreme Court,[7] fraudulent inducement is a classic example of an independent tort. *American Aviation*, 891 So. 2d at 538 (noting that "[f]raudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.") (citing *HTP Ltd.*, 685 So. 2d at 1239). Of course, as with most rules, there are exceptions, and there are exceptions to the exceptions.

Subsequent to the Florida Supreme Court's decisions in *HTP Ltd.* and *American Aviation,* Florida's District Courts of Appeal have clarified that while the economic loss rule is *generally* inapplicable to fraudulent inducement claims, this is not always the case, depending on the facts and circumstances. In order to guide trial courts through the difficult process of determining whether a particular fraudulent inducement claim is barred

---

[7] In determining and applying the law of Florida, I "must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) (citations omitted).

by the economic loss rule, a test was developed. This test – which has been expressly endorsed by at least three District Courts of Appeal[8] – instructs courts to engage in the following analysis: "[i]f the fraud occurs in connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort. However, where the fraud complained of relates to the performance of the contract, the economic loss doctrine will limit the parties to their contractual remedies." *Allen v. Stephan Co.*, 784 So. 2d 456, 458 (Fla. 4th DCA 2000); *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003); *Vesta Const. and Design, L.L.C. v. Lotspeich & Associates, Inc.*, 974 So. 2d 1176, 1182 (Fla. 5th DCA 2008). The Eleventh Circuit has also acknowledged the utility of this test, recognizing it as one that distinguishes "representations which occur during the performance of the contract" – which are barred by the economic loss rule – and representations "which are independent of the contract, such as those made to induce a party to enter the contract" – which are *not* barred. *Luigino's Intern. v. Miller*, 311 Fed. Appx. 289, 294 (11th Cir. 2009) (noting that economic loss rule would not apply to bar a fraudulent inducement claim based on a misrepresentation regarding ownership of property despite fact that the misrepresentation was expressly set forth in lease agreement because the misrepresentation induced plaintiff to enter into a contract that was incapable of performance given that defendant did not actually own the property) (citing *Vesta*, 974 So. 2d at 1181-82)).[9]

---

[8] The Supreme Court of Florida has not issued a decision regarding this particular issue.

[9] I reject Defendant Frank Garcia's contention that the applicable test for determining the applicability of the economic loss rule is whether "the alleged misrepresentations merely

Applying the aforementioned framework to the facts of the instant case, I conclude that Plaintiff's fraudulent inducement claims are not barred by the economic loss rule,[10] as they are founded upon misrepresentations which induced Plaintiff to enter into transactions, and not representations relating to the actual performance of an agreement. In reaching this conclusion, I am particularly persuaded by the Fourth District Court of Appeal's seminal decision in the *Allen* case, 784 So. 2d at 456-59, which presented a similar set of facts and, as noted above, has been cited with approval by at least three (of five) District Courts of Appeal, as well as the Eleventh Circuit.

In *Allen*, the sellers of a company falsely represented in a sale contract that the company being sold had paid its taxes and filed all necessary returns. 784 So. 2d at 457. Subsequently, the Florida Department of Revenue determined that the company owed nearly $100,000 in unpaid taxes. *Id.* As a result, the buyers sued the sellers alleging that they had been fraudulently induced into entering in to the transaction. *Id.* The trial court determined that Plaintiff's claim was not barred by the contractual privity economic loss rule. *Id.* After applying the test set forth above, the Fourth District affirmed the trial court's

---

relate to the value of the asset/consideration that was bargained for." **[DE 38]** (citing *Buckeye Ventures, Inc. v. Trafalgar Capital Specialized Investment Fund Luxembourg*, 2009 WL 2477470, *5 (S.D. Fla. 2009 Aug. 11, 2009) (declining to apply economic loss rule because Plaintiff was "induced to sign the agreement" at issue as a result of Defendant's misrepresentations and noting, in dicta, that the result would be different if the misrepresentation had simply related to the value of an asset being transferred)).

[10] Nor does the existence of a "merger clause" in the agreement bar Plaintiff's fraudulent inducement claims, for under Florida law, "[t]he existence of a merger or integration clause, which purports to make oral agreements not incorporated into the written contract unenforceable, does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement." *Mejia v. Jurich*, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001) (reversing dismissal and declining to apply economic loss rule, noting that "when fraudulent misrepresentations in the formation of the contract are alleged . . . the economic loss rule does not bar recovery.").

Order, concluding that the fraudulent inducement claim was not barred by the economic loss rule because "the representation [was] simply made and relied upon in inducing the completion of the transaction." *Id.* at 458.  Here, as in *Allen*, Plaintiff alleges that Mr. and Mrs. Garcia made misrepresentations regarding the ownership and encumbered status of certain mortgage loans, and that these misrepresentations were made to induce Plaintiff to enter into certain Mortgage Loan transactions with FGMC.  Because this alleged "fraud occur[ed] in connection with misrepresentations, statements or omissions which cause[d] [Plaintiff] to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort" that is not subject to the economic loss rule.[11]  784 So. 2d 456 at 458; *see also Reese v. JPMorgan Chase & Co.*, 2009 WL 3346783, *1 (S.D. Fla. Oct. 15, 2009) (King, J.) (noting that if the fraud alleged "relates to a misrepresentation which caused the plaintiff to enter into the agreement, then such fraud would be fraud in the inducement, which will not be barred by the economic loss rule.").[12]

---

[11] I note that this result does not conflict with the purpose of the economic loss rule, which is "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *American Aviation,* 891 So. 2d at 536.  Where the agreed-to allocation of economic risks was the result of fraudulent misrepresentations, it cannot be said that the contractual allocation of economic losses was fully and fairly assented-to by the defrauded party.

[12] I disagree with Defendant that *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So. 2d 74 (Fla 3d DCA 1997) should control this case.  As Defendant correctly points out, that case involved "duties of the defendant" that "defendant did not perform as promised," and not misrepresentations regarding an existing set of facts that induced Plaintiff to enter into the agreement.  See **[DE 38, p. 5]**; *Hotels Key Largo*, 694 So. 2d at 76 (noting that "[a]ll of the plaintiffs' claims were essentially premised on allegations that the defendants made three unfulfilled promises.").  Nor does Judge Moore's decision in *Ben-Yishay v. Mastercraft Development, LLC*, 553 F. Supp. 2d 1360 (S.D. Fla. 2008) control, because in that case the "fraudulent representations on which Plaintiffs allegedly relied [were] the same *obligations* memorialized in the agreement." *Id.* at 1370 (emphasis added).  As noted above, the representations allegedly relied upon by Plaintiff in the instant case were representations of fact, not contractual obligations.

Notwithstanding the inapplicability of the economic loss rule to Plaintiff's fraudulent inducement claims, Plaintiff's fraudulent inducement claims still fail as a matter of law because Plaintiff has failed to plead the circumstances surrounding the alleged fraud with sufficient particularity. As noted above, the Eleventh Circuit has held that in order to comply with the mandate of Rule 9(b), a Plaintiff alleging fraud must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d at 1202 (cites and quotes omitted). Here, Plaintiff has not adequately pled the "time and place" of the alleged misrepresentations, despite having had an opportunity to amend its complaint. Instead, Plaintiff merely asserts that the misrepresentations occurred "[o]n or before July 3, 2006." (Am. Compl. at ¶¶ 8, 17, 25, 39, 40, 41). Because Plaintiff has failed to adequately plead the time and place of the misrepresentations at issue, Plaintiff's fraudulent inducement claims fail as a matter of law. *See Ambrosia Coal & Construction Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (affirming dismissal of complaint for failure to meet Rule 9(b) requirements).[13]

---

[13] Further, because the civil conspiracy count is predicated upon Plaintiff's non-viable fraudulent inducement claims, "it follows that there can be no actionable conspiracy to commit the same acts [because] [a]n actionable conspiracy requires an actionable underlying tort or wrong." *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984) (citing *Buchanan v. Miami Herald Publishing Company*, 230 So. 2d 9 (Fla. 1969); *Kent v. Kent*, 431 So. 2d 279 (Fla. 5th DCA 1983); *Buckner v. Lower Florida Keys Hospital District*, 403 So. 2d 1025 (Fla. 3d DCA 1981), *petition for review denied*, 412 So. 2d 463 (Fla. 1982)).

12

> B.  *Plaintiff Has Alleged Adequate Facts Which, Taken as True, Would Allow it to Pierce the Corporate Veil and Maintain its Contract Claims Against Frank Garcia*

Defendant Frank Garcia also contends that the breach of contract claims asserted against him in his personal capacity – i.e., counts five, six, and seven – should be dismissed because of Plaintiff's failure to adequately allege facts that would allow FGMC's corporate veil to be pierced.  See **[DE 3, p. 9]**.  Plaintiff disputes this assertion, citing to various allegations in the Amended Complaint indicating that Mr. Garcia FGMC was a mere instrumentality utilized for various improper purposes and his own personal benefit.  **[DE 33]**.

The seminal Florida Supreme Court case on the issue of piercing corporate veils is *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984).  In the *Dania Jai-Alai* case, the Florida Supreme Court concluded that piercing the corporate veil requires a plaintiff to prove that: (1) the corporation is a "mere instrumentality" or alter ego of the defendant; and (2) that the defendant engaged in "improper conduct" in the formation or use of the corporation.  *Id.* at 1120-21.  Applying the directives of *Dania Jai-Alai* to complaints that are attacked via motion to dismiss, it has been held that the complaint attempting to pierce the corporate veil "must allege facts sufficient to pierce the corporate veil" of the corporation.  *Aldea Communications, Inc. v. Gardner*, 725 So. 2d 456, 457 (Fla. 2d DCA 1999).

In order to allege facts sufficient to pierce the corporate veil, a plaintiff "must allege not only that the corporation is a mere instrumentality of the individual defendant, but [also] that the individual defendant engaged in 'improper conduct' in the formation or use of the

13

corporation." *Id.* (cites and quotes omitted). Here, Plaintiff has alleged that "Frank Garcia used the proceeds from the sale of the loans to NAMC [by FGMC] to repay his individual mortgages," and that FGMC was dominated by Frank Garcia in such a way that FGMC was the alter ego of Frank Garcia. (Am. Compl. ¶ 74, 75, 76, 95, 98, 100). Plaintiff has also alleged that Frank Garcia "utilized FGMC to fraudulently induce NAMC into purchasing a group of mortgage[] [loans] that were represented to be of a certain kind and quality, but in fact were not of such kind and quality," and that Mr. Garcia used FGMC to "profit[] from selling loans to NAMC that were represented to be insured and guaranteed by . . . but were not so insured or guaranteed." (Am. Compl. ¶ ¶ 77, 97). These factual allegations, taken as true, are sufficient to satisfy the "mere instrumentality" and "improper conduct" requirements set forth in *Dania Jai-Alai*. 450 So. 2d at 1120 (indicating that corporate veil can be pierced if "the corporation is in actuality the alter ego of the stockholders and that it was organized or . . . employed by the stockholders for fraudulent or misleading purposes, or in some fashion that . . . the corporate assets depleted for the personal benefit of the individual stockholders, or . . . that property belonging to the corporation can be traced into the hands of the stockholders."). Accordingly, Mr. Garcia's motion to dismiss counts five, six, and seven will be denied.

### V.     Conclusion

Based on the foregoing, I dismiss counts one, two, and three for failure to state a claim, and decline to dismiss counts five, six, and seven. The dismissal is *with prejudice* because Plaintiff has failed to adequately plead these claims despite having previously amended its complaint. *Novoneuron Inc. v. Addiction Research Institute, Inc.,* 326 Fed. Appx. 505, 507 (11th. Cir. 2009) (affirming dismissal with prejudice where Plaintiff

amended as a matter of right and later decided to litigate the merits of Defendant's motion to dismiss rather than requesting leave to amend).  Accordingly, it is hereby

ORDERED AND ADJUDGED that:

1. Defendants' Motions to Dismiss **[DE 30]; [DE 32]** are GRANTED IN PART.

2. Counts one, two, and three of Plaintiff's Amended Complaint **[DE 29]** are DISMISSED WITH PREJUDICE.

3. This matter shall proceed as to counts four, five, six, and seven only.

4. Because the factual allegations set forth in counts one and two relate to and are partially incorporated into counts five, six, and seven, Defendants shall answer Paragraphs 1-50, and Paragraphs 58-103 of Plaintiff's Amended Complaint **[DE 29]** in accordance with Fed.R.Civ.Pr. 8(b) **no later than Monday March 15, 2010 at 5:00 p.m.**

DONE and ORDERED IN CHAMBERS at Miami, Florida this 26th day of February, 2010.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge McAliley
    Counsel of record

15